UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MARIO J. SEGRETI | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 1:07-cv-00287-RBW |
| | ) | |
| A. MARK CHRISTOPHER, et al. | ) | |

**REPLY TO OPPOSITION TO MOTION TO DISMISS THE SECOND AMENDED
COMPLAINT PURSUANT TO FED. R. CIV. P. RULE 12(b)(6)**

Defendants A. Mark Christopher, Herge, Sparks & Christopher, LLP, Vaughan, Fincher

& Sotelo, P.C., and J. Curtis Herge, by counsel, file this Reply to Plaintiff Mario J. Segreti's

Opposition to Motion to Dismiss ("Opposition") the Second Amended Complaint, and state as

follows:

**I.    INTRODUCTION**

Mario J. Segreti ("Mr. Segreti") admits that his claim against Mr. Christopher, et al. is

based on his grandmother Marguerite Corsetti's ("Mrs. Corsetti") "agreement" or "willingness"

to enter into an "Inter Vivos Transfer" of the Property to him.  See Opposition to Motion to

Dismiss Second Amended Complaint, p. 1-2 ("Opposition").[1]  Mr. Segreti, however, wrongly

---

[1]    Here again, Mr. Segreti cannot help but misstate the nature of the alleged "Inter Vivos
Transfer" by omitting any reference to his prior testimony in the Probate Matter that he and Mrs.
Corsetti allegedly contemplated a sale of the Property rather than an outright transfer.  See
Memorandum Order, ¶ 28. "So they talked about his purchasing Mrs. Corsetti's house for
$200,000 over ten years, and that he would put work into the house.")  Yet, as Judge Lopez
recites, Mrs. Corsetti did nothing to effectuate her alleged "willingness" or "intent" to transfer
the Property to Mr. Segreti since her 1993 estate planning documents left the Property to her
daughters.  Id.    ("When asked about a meeting discussing Mrs. Corsetti's 1993 will that
bequeathed her house to others, Mario said that he deliberately left that meeting because he did
not want to be a part of it; as Mario explained, that was because in 1993 he and his grandmother
were still discussing the details of their agreement.")  It is entirely apparent that, based on Mr.

states that the existence or non-existence of that alleged agreement was never addressed, and determined adversely to Mr. Segreti, by the Honorable Jose M. Lopez in the D.C. Superior Court – Probate Division in <u>Mario J. Segreti v. Luke De Iuliis</u>, Adm. No. 652-04 ("Probate Matter").

Mr. Segreti's claim is disingenuous. The very same alleged "agreement" or "willingness" of Mrs. Corsetti to transfer the Property was litigated and was part and parcel of Mr. Segreti's purported oral or written contract to make a Will.

As recited by Judge Lopez in the Memorandum Order, attached in two parts as Exhibit 1 to the Memorandum in Support of the Motion to Dismiss the Second Amended Complaint ("SAC"), Mario testified about the alleged agreement with Mrs. Corsetti as follows:

> **Mario testified that he talked with his grandmother in 1992 and 1993 about the terms of his proposed contract. He said in an affidavit that in 1992 there was already a 'verbal contract' between he and his grandmother, that he was supposed to stay with her, help around the home, repair and maintain the house in exchange for ownership of the house when she died.** Yet he tried to explain in his testimony that the reason he remained silent while Mrs. Corsetti made a will in July of 1993 contrary to their agreement was because they were still working out the terms. Mario then testified that he raised the issues in 1997 about their agreement not being in writing. As he explained, Mrs. Corsetti's 1997 Will was the proof that they had a deal, or shall we say a contract.

<u>See</u> ¶ 71 of Memorandum Order (emphasis added). Judge Lopez went on to find, as recited in great detail, that Mrs. Corsetti never made such an agreement. <u>See</u> Memorandum Order, ¶¶ 76, 77, 79, and 82.

It is patently clear that Mr. Segreti's current characterization of Mrs. Corsetti's alleged agreement or "willingness" to transfer the Property to him artfully, if not disingenuously, provides only half of his prior version of this alleged agreement which was wrapped up within the claim he brought before the D.C. Superior Court in the Probate Matter. That issue was

---

Segreti's own testimony, there was never any "willingness" or "intent" by Mrs. Corsetti to transfer the Property after Mr. Christopher's alleged advice since, according to Mr. Segreti, the "details" were still being worked out.

2

decided adversely to Mr. Segreti in the Probate Matter and Mr. Segreti does not get to re-litigate the issue in the context of a legal malpractice suit against Mr. Christopher, et al.

The sum and substance of Mr. Segreti's Opposition is that the gravamen of his SAC are his allegations that:

1)   Mrs. Corsetti sought Mr. Christopher's advice to make an "Inter Vivos Transfer" of   the Property to Mr. Segreti by gift in the early1990s; (SAC, ¶ 16)

2)   As joint counsel for Mrs. Corsetti and Mr. Segreti, Mr. Christopher advised Mrs. Corsetti not to transfer property, but to do so by testamentary devise; (SAC, ¶ 17) and

3)   Mr. Christopher failed to advise Mr. Segreti of risks of relying on a contemplated future transfer which provided no certainty. (SAC, ¶ 22).

See pages 3-4 of the Opposition.

Mr. Segreti suggests that the agreement, which Judge Lopez decided did not occur, was distinct from his current incarnation of the "agreement" or "willingness" of Mrs. Corsetti to transfer the Property to him.    In reality, and perhaps in keeping with Judge Lopez' characterization of Mr. Segreti's testimony in the Probate Matter,[2] Mr. Segreti mischaracterizes the nature of the alleged early 1990s agreement in the present suit in an attempt to defeat the preclusive effect of the application of collateral estoppel.   Yet one only need look to paragraph 71 of the Memorandum Order to see that the issue was previously decided adverse to Mr.

---

[2]    See ¶ 46 of the Memorandum Order wherein Judge Lopez found that ("[d]ue to his strained efforts, Mario's testimony seldom was sincere... He seemed overzealous to provide a rationale for everything to the point of giving an impression that he was trying to color the facts to suit his picture of the truth.")

Segreti. For the reasons set forth below, Mr. Segreti's current claims are barred by collateral estoppel and the Amended Complaint should be dismissed with prejudice.

## II.    ARGUMENT

### A.    Defendants Have Clearly Demonstrated That the Doctrine of Collateral Estoppel Bars Mr. Segreti From Re-Litigating the Existence of Mrs. Corsetti's Alleged Agreement (Or As Now Characterized "Willingness") to Transfer the Property to Him.

The parties notably do not disagree on the applicable case law and standard for the doctrine of collateral estoppel. The only dispute at this point is whether it applies in this instance. It is patently clear that all elements of the doctrine of collateral estoppel are satisfied and Mr. Segreti's Amended Complaint ought to be dismissed with prejudice.

### 1.    Issue Already Decided Adversely To Mr. Segreti[3]

As set forth above, it is clear that Judge Lopez decided the issue of Mrs. Corsetti's alleged "agreement" or "willingness" to transfer the Property to Mr. Segreti in the early 1990s adversely to Mr. Segreti. See ¶ 71 of the Memorandum Order. Mr. Segreti's suggests that his claim against Mr. Christopher is based on "separate and distinct allegations" that Mrs. Corsetti agreed to an "Inter Vivos Transfer" of title to the Property and that Mr. Christopher derailed this transfer by his alleged advice to transfer the Property upon Mrs. Corsetti's death without advising Mr. Segreti of the risk that Mrs. Corsetti could change her mind. See Opposition, p. 8.

Mr. Segreti's claim, however, would have to be premised on a factual basis that Mrs. Corsetti ever agreed to the transfer the Property to him by either "Inter Vivos Transfer" or

---

[3]    Mr. Segreti also states that Judge Lopez did not decide whether Mr. Christopher committed legal malpractice. Mr. Christopher, et al. have never made such a contention. Mr. Segreti, however, misses the point of the Motion. It is Judge Lopez' decision on the fact that Mrs. Corsetti never agreed to transfer the Property to Mr. Segreti that precludes this Court from determining Mr. Christopher's alleged negligence because the factual underpinning for the current claim cannot be re-litigated by Mr. Segreti.

testamentary devise. Here again, Mr. Segreti cannot help but misstate the nature of the alleged "Inter Vivos Transfer" by omitting any reference to his prior testimony in the Probate Matter that he and Mrs. Corsetti allegedly contemplated a sale of the Property rather than an outright transfer. See Memorandum Order, ¶ 28. ("So they talked about his purchasing Mrs. Corsetti's house for $200,000 over ten years, and that he would put work into the house.") Yet, as Judge Lopez recites, Mrs. Corsetti did nothing to effectuate her alleged "willingness" or "intent" to transfer the Property to Mr. Segreti since her subsequent 1993 estate planning documents left the Property to others. Id. ("When asked about a meeting discussing Mrs. Corsetti's 1993 will that bequeathed her house to others, Mario said that he deliberately left that meeting because he did not want to be a part of it; as Mario explained, that was because in 1993 he and his grandmother were still discussing the details of their agreement.") It is entirely apparent that, based on Mr. Segreti's own testimony, there was never any "willingness" or "intent" by Mrs. Corsetti to transfer the Property after Mr. Christopher's alleged advice since, according to Mr. Segreti, the "details" were still being worked out and there was never any firm intent by Mrs. Corsetti to transfer the Property to him.

Without the ability to prove that Mrs. Corsetti ever agreed to either an "Inter Vivos Transfer" or a transfer through testamentary devise would have occurred, Mr. Segreti simply cannot show that anything Mr. Christopher may, or may not, have done caused him any damages. And without the ability to prove that essential issue, Mr. Segreti simply cannot support a cause of action against Mr. Christopher since that existence of Mrs. Corsetti's "agreement" or "willingness" to transfer the Property to Mr. Segreti is the cornerstone of the action. See generally, R. Mallen and J. Smith, Legal Malpractice, § 23.5 at 469 (2006 Ed.) ("Proof of causation requires analysis of the consequences of proper advice. Thus, the client needs to prove

what should have been achieved had the 'proper' advice been given. **If the alleged error is the failure to obtain or advise of a provision, concession or benefit, the client must prove that the other party would have agreed.** It is not sufficient to show that the other party 'might have' agreed.") (emphasis added).

> 2. There Is No Unfairness To Mr. Segreti in Barring Him From Litigating the Existence of Mrs. Corsetti's "Willingness" or "Agreement" to Transfer the Property to Him When He Had the Opportunity to Litigate the Matter, Did Litigate the Matter Extensively, and the Stakes Were Whether Or Not He Was to Get the Property

Mr. Segreti weakly suggests that somehow he did not have adequate incentive to litigate the issue of whether Mrs. Corsetti ever agreed to transfer the Property to him. Yet the object of Mr. Segreti's suit in the Probate Matter was to set aside Mrs. Corsetti's estate planning so that he would take the Property under Mrs. Corsetti's prior estate planning documents[4] or to prove that there was an independent agreement by Mrs. Corsetti which would preclude Mrs. Corsetti from altering her estate plans. Mr. Segreti had every incentive and every opportunity to litigate the issue in the Probate Matter and did so aggressively. Unfortunately for Mr. Segreti, his testimony was disbelieved and an adverse judgment was entered against him.

> B. Mr. Segreti's Newly Added Claim for Breach of Fiduciary Duty Does Not Alter the Result in this Case

Mr. Segreti makes no effort whatsoever to differentiate his newly minted claim for breach of fiduciary duty from his original claim of legal malpractice/third-party beneficiary. That is a tacit admission that the claims are, in reality, one in the same. For the reasons set forth in the Memorandum in Support of the Motion to Dismiss the SAC, those claims are barred because Mr.

---

[4]    See ¶ 7 of the Memorandum Order.

Segreti cannot prove the essential element of that claim – that Mrs. Corsetti ever agreed to transfer the Property to him.

     **C.**     **Mr. Christopher, et al., Oppose Mr. Segreti's Request to Stay This Case Pending Resolution of Mr. Segreti's Appeal of the Memorandum Order**

Mr. Christopher and the other Defendants oppose Mr. Segreti's request to stay this case pending the resolution of Mr. Segreti's appeal of Judge Lopez' decision. If the D.C. Court of Appeals affirms the Memorandum Order then the bar of collateral estoppel issue will have to be decided by this Court anyway. If the D.C. Court of Appeals reverses the Memorandum Order and Mr. Segreti ultimately prevails then he will have no ascertainable damages against these Defendants. Quite simply, there is no logical reason to stay this case pending Mr. Segreti's quest to overturn Judge Lopez' well-reasoned opinion.

**III.**     **CONCLUSION**

WHEREFORE, for the foregoing reasons, those appearing in the Memorandum in Support of the Motion to Dismiss, and those which may be urged upon the hearing of this matter, Defendants A. Mark Christopher, Herge, Sparks & Christopher, LLP, Vaughan, Fincher & Sotelo, P.C., and J. Curtis Herge, respectfully request this Honorable Court to dismiss the Second Amended Complaint with prejudice and for such other relief as this Court deems just.

Dated: September 4, 2007          Respectfully submitted,

                    SANDS ANDERSON MARKS & MILLER
                    A Professional Corporation

                    /s/ George O. Peterson

                    J. Jonathan Schraub   (DC Bar No. 950816)
                    George O. Peterson   (DC Bar No. 478050)

                    1497 Chain Bridge Road
                    Suite 202

McLean, Virginia  22101
(703) 893-3600
(703) 893-8484 (facsimile)
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of September, 2007, a true and correct copy of the foregoing Defendants A. Mark Christopher, Herge, Sparks & Christopher, LLP, Vaughan, Fincher & Sotelo, P.C., and J. Curtis Herge's Reply to Opposition to Motion to Dismiss the Second Amended Complaint was served, by ECF upon:

> Ashley E. Wiggins, Esquire
> Griffin & Murphy, LLP
> 1912 Sunderland Place, N.W.
> Washington, D.C. 20036
> *Co-Counsel for Plaintiff*

> /s/ George O. Peterson
> _____
> George O. Peterson