UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                    )
MARIO J. SEGRETI,                   )
                                    )
            Plaintiff               )
                                    )
    v.                              )   Civil Action No. 07-287 (RBW)
                                    )
A. MARK CHRISTOPHER, et al.,        )
                                    )
            Defendants.             )
                                    )
_____)
```

**MEMORANDUM OPINION**

Mario J. Segreti, the plaintiff in this civil lawsuit, seeks to recover compensatory and punitive damages for "injuries . . . resulting from legal services provided to [or] for the direct benefit of the [p]laintiff" by his alleged former attorney, A. Mark Christopher, the law firms of Herge, Sparks & Christopher LLP ("HSC") and Vaughn, Fincher & Sotelo PC ("VFS"), and J. Curtis Herge, one of the principals of HSC.  Second Amended Complaint (the "Second Am. Compl.") ¶ 1.  Currently before the Court is the defendants' Motion to Dismiss the Second Amended Complaint Pursuant to [Federal Rule of Civil Procedure] 12(b)(6).  After carefully considering the plaintiff's second amended complaint, the defendants' motion to dismiss, and all

memoranda and exhibits relating thereto,[1] the Court concludes that it must deny the defendants' motion for the reasons that follow.

## I. Background

The following facts are either alleged by the plaintiff in his amended complaint or are matters of public record. "Throughout the 1990[s] until her death on March 24, 2004," Second Am. Compl. ¶ 13, Christopher, "an attorney . . . [who] is neither licensed to practice law nor maintains offices in the District of Columbia," id. ¶ 5, "prepared Marguerite Corsetti's annual tax returns," id. ¶ 13. Corsetti is the plaintiff's grandmother, and he lived with her at a property located at 5113 Western Avenue, N.W., Washington, DC 20016 (the "Property"), id. ¶¶ 14-15, "from approximately 1990 until her death," id. ¶ 15. Throughout this time period, Christopher worked at HSC, first as an associate and later as a partner. Id. ¶ 10.

Sometime in the early 1990s, the plaintiff and Corsetti "jointly sought legal assistance from . . . Christopher to effectuate an inter vivos transfer of title of the Property from . . . Corsetti to the [p]laintiff." Id. ¶ 16. However, "Christopher advised [the p]laintiff and . . . Corsetti not to make [an] [i]nter [v]ivos transfer during the lifetime of . . . Corsetti, but rather to arrange for the transfer to take place through [her] estate upon her death." Id. ¶ 17. Christopher did not advise the plaintiff or Corsetti that "transferring title of the Property to [the p]laintiff through an ordinary testamentary devise would not be binding on . . . Corsetti," nor did he advise them that the plaintiff's "expectancy of becoming the sole devisee of the Property under . . . Corsetti's will

---

[1] In addition to the plaintiff's second amended complaint and the defendants' motion to dismiss, the Court considered the following documents in reaching its decision: (1) the defendants' Memorandum in Support of Motion to Dismiss the Second Amended Complaint Pursuant to [Federal Rule of Civil Procedure] 12(b)(6) (the "Defs.' Mem."), (2) the plaintiff's Opposition to Motion to Dismiss Second Amended Complaint (the "Pl.'s Opp'n"), and (3) the defendants' Reply to Opposition to Motion to Dismiss the Second Amended Complaint Pursuant to [Federal Rule of Civil Procedure] 12(b)(6) (the "Defs.' Reply").

was not legally protected." Id. ¶ 22. "Relying solely upon the advice of . . . Christopher," the plaintiff and Corsetti decided to forego the creation of an inter vivos trust, id. ¶ 21, and the plaintiff paid HSC for Christopher's services, id. ¶¶ 19-20.

Christopher subsequently "prepared and participated in the execution of estate planning documents" for Corsetti, including, inter alia, a will and a revocable trust, in 1997. Id. ¶ 23. These instruments "devised the Property outright to the [p]laintiff upon . . . Corsetti's death." Id. ¶ 24. However, in 2004 Christopher met with Corsetti again, id. ¶ 26, after which he "participated in and procured the execution of" revised testamentary instruments, id. ¶ 28, "devis[ing] the Property to others" and "omitting the [p]laintiff entirely," id. ¶ 29. Curtis Herge, a partner at HSC, prepared these documents at Christopher's direction. Id. ¶ 27. Neither Christopher nor Herge "advised or consulted with the [p]laintiff about . . . Corsetti's revised estate plan," id. ¶ 30, and neither defendant "sought the consent of [the p]laintiff to represent . . . Corsetti in the preparation and execution" of these revised documents, id. ¶ 31.

Corsetti died on March 24, 2004. Id. ¶ 33. Following her death, "Christopher represented the [t]rustees of [Corsetti's] testamentary [t]rust . . . in their effort to remove [the p]laintiff from the Property." Id. ¶ 34. Christopher also "agreed to be an expert witness for the [t]rustees against the [p]laintiff in a civil matter in the [Superior Court for the District of Columbia (the 'Superior Court')] related to, inter alia, removing [the p]laintiff from the Property," id. ¶ 35, in which capacity he "testified . . . at a preliminary injunction hearing against the [p]laintiff," id. ¶ 36. Christopher subsequently testified at a deposition that he "remained as an expert witness" in the trustees' civil suit and "was further retained as an expert witness for the [t]rustees" in the probate proceeding regarding Corsetti's estate. Id. ¶ 38.

3

On October 17, 2006, the Superior Court issued a memorandum order in the probate matter resolving, <u>inter</u> <u>alia</u>, the question of whether Corsetti "had an [oral or written] contract with [the plaintiff] to make a will leaving him her house." Defs.' Mem., Ex. 1 (Memorandum Order entered Oct. 17, 2006) (the "Super. Ct. Order") at 1. After hearing from numerous witnesses including the plaintiff, the Superior Court found as a factual matter that "the evidence in th[e] case [wa]s not sufficient to overcome the lowest burden of proof by a preponderance of the evidence that the decedent . . . and the plaintiff . . . had an implied contract for services, so there c[ould not have] be[en] an oral contract to make a will." <u>Id.</u> ¶ 69. Rather, the Superior Court found it "more credible that the nature of the 'deal' [between Corsetti and the plaintiff] was in the nature of a mutual understanding . . . between a grandmother and a grandson whereby he lived in her house, helped her out[,] and she helped him." <u>Id.</u> ¶ 75.

Having failed in his attempt to convince the Superior Court that Corsetti had contracted to devise her house to him, the plaintiff filed his original complaint in this Court on February 8, 2007. He filed amended complaints on February 14, 2007, and (with prior leave from the Court) on August 1, 2007. In his second amended complaint, the plaintiff alleges that the work performed by Christopher and Herge with respect to Corsetti's revised testamentary documents and Christopher's subsequent representation of the trustees named in those documents "w[as] substantially related and materially adverse to" Christopher's prior joint representation of Corsetti and the plaintiff in 1997, <u>id.</u> ¶ 39, and that "Christopher's actions . . . constitute the unauthorized practice of law in the District of Columbia," <u>id.</u> ¶ 42. He further alleges that even if he was not technically Christopher's (and, by extension, HSC's) client in 1997, the plaintiff was "the intended third-party beneficiary" of Christopher's work for Corsetti. <u>Id.</u> ¶ 41.

4

Because "Christopher . . . neglected to . . . advise the [p]laintiff and . . . Corsetti of the need for a [contract to form a will]," the plaintiff alleges that he and Corsetti "did not proceed to enter into a [contract to form a will]," id. ¶ 47(a), and "did not proceed to consummate [an] [i]nter [v]ivos [t]ransfer, to the ultimate detriment of the [p]laintiff," id. ¶ 47(b). Further, the plaintiff alleges that the defendants "proceeded to . . . take materially adverse positions against [the p]laintiff by counseling, directing[,] and facilitating action by . . . Corsetti" without prior approval from the plaintiff, and that Christopher compounded his wrongdoing "by acting as an expert witness in litigation against [the p]laintiff [that] was materially adverse to [his] prior legal representation of [the p]laintiff." Id. ¶ 47(c). According to the plaintiff, these allegations suffice to state claims for legal malpractice, id. ¶¶ 48-50, and breach of fiduciary duty, id. ¶¶ 61-64.[2]

The defendants seek to dismiss the plaintiff's second amended complaint in its entirety under the doctrine of collateral estoppel. They argue that the plaintiff's lawsuit "is premised on a factual allegation that he had an agreement with [Corsetti] to transfer [the Property] to him," Defs.' Mem. at 2, and that the plaintiff is "collaterally estopped from asserting that there was ever any agreement between him and . . . Corsetti" to that effect based on the Superior Court's decision in the probate matter for Corsetti's estate, id. at 3. They contend that as a consequence of this finding by the Superior Court the plaintiff "simply cannot show a breach of duty or breach of fiduciary duty on the part of [the plaintiff] or a causal link between anything [the plaintiff] is alleged to have done and any damages." Id. In addition, VFS argues that it should be dismissed

---

[2] The plaintiff delineates three counts in his second amended complaint, but Count II is an alternative claim for legal malpractice against a third-party beneficiary. See Second Am. Compl. ¶¶ 51-59 (claiming, inter alia, that the "[p]laintiff was the third party beneficiary of the legal representation of . . . Corsetti").

5

as a defendant because the plaintiff does not allege that Christopher was acting within the scope of his employment while Christopher worked at VFS.  Id. at 20-21.

In response to the defendants' motion to dismiss, the plaintiff contends that "[t]he issues asserted by [the plaintiff] in this matter are not substantially similar to those" before the Superior Court in the probate matter regarding Corsetti's estate, a prerequisite for the application of the doctrine of collateral estoppel.  Pl.'s Opp'n at 7.  He further asserts that he "clearly makes" the allegation that Christopher was acting within the scope of his employment while at VFS.  Id. at 15.  Finally, the plaintiff suggests that if the Court were inclined to grant the defendants' motion to dismiss, it should "enter a stay of this matter in lieu of dismissal pending the outcome of [the plaintiff's] appeal of the judgment in the [p]robate [m]atter" regarding Corsetti's estate.  Id. at 15.  VFS does not challenge this assertion in the defendants' reply memorandum, but the defendants otherwise dispute the plaintiff's arguments.

## II. Standard of Review

As the Court previously observed, the defendants seek dismissal of all claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6).  On a motion to dismiss under Rule 12(b)(6), the Court "must treat the complaint's factual allegations as true and must grant the plaintiff the benefit of all reasonable inferences [that can be derived] from the facts alleged."  Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (internal quotation and citation omitted).  Factual challenges are not permitted under Rule 12(b)(6), and the Court may only consider the facts alleged in the complaint, any documents attached as exhibits thereto (or incorporated therein), and matters subject to judicial notice in weighing the merits of the motion.  EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624-25 (D.C. Cir. 1997).  The Court's focus is

therefore restricted to the facts as alleged by the plaintiff, which must be sufficiently detailed "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955, 1965 (2007).

### III. Legal Analysis

The defendants' motion to dismiss presents two separate issues for the Court's consideration: (1) whether the plaintiff's suit is barred in its entirety by the doctrine of collateral estoppel based on the rulings of the Superior Court in the probate matter regarding Corsetti's estate, and (2) whether the plaintiff alleges in his second amended complaint that Christopher was acting within the scope of his employment while he was working at VFS. The latter question is easily resolved in the plaintiff's favor, for the plaintiff explicitly alleges that Christopher, "while a partner at [VFS,] . . . acted within the scope and course of his employment[] on behalf of [VFS]." Second Am. Compl. ¶ 11. Thus, the only substantial question before the Court is whether the plaintiff's suit is precluded by the Superior Court's memorandum order entered in 2006.

Under District of Columbia law,[3] the doctrine of collateral estoppel (also known as issue preclusion) "restricts a party in certain circumstances from relitigating issues or facts actually litigated and necessarily decided in an earlier proceeding." Kovach v. District of Columbia, 805

---

[3] Under the Full Faith and Credit Act, 28 U.S.C. § 1738 (2000), "judicial proceedings . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." "It has long been established that § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments," but rather "goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken." Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985) (internal quotation and citation omitted). Accordingly, "a federal court must give to a state[]court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City Sch. Distr. Bd. of Educ., 465 U.S. 75, 81 (1984).

A.2d 957, 962 (D.C. 2002) (internal quotation and citation omitted).  The doctrine bars a court in a subsequent action from reaching a decision different from that reached by the court in an earlier case where "(1) the issue [wa]s actually litigated [in the earlier case] and (2) determined by a valid, final judgment on the merits[] (3) after a full and fair opportunity for litigation by the parties or their privies[] (4) under circumstances where the determination was essential to the judgment, and not merely dictum."  Washington Med. Ctr., Inc. v. Holle, 573 A.2d 1269, 1283 (D.C. 1990).  "An issue is actually litigated when it is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined."  Borger Mgmt., Inc. v. Sindram, 886 A.2d 52, 62 (D.C. 2005) (internal quotations and citation omitted).

  Plainly, the Superior Court did not "actually litigate[]" the exact issues in the probate matter regarding Corsetti's estate as those before the Court in this case.  Id.  The former case was necessarily limited to questions of the validity of Corsetti's testamentary documents and the subsidiary issue of whether Corsetti had contracted to devise her house to the plaintiff, see Super. Ct. Order at 1 (listing the issues presented in the probate matter), whereas the plaintiff's lawsuit in this Court is for alleged legal malpractice committed by Christopher, Herge, and the law firms that employed them, see Second Am. Compl. ¶¶ 43-64 (listing the plaintiff's claims against the defendants).  Nevertheless, the defendants argue that the "issue of the alleged agreement between [the plaintiff] and . . . Corsetti is at the heart of [the plaintiff's] present claims," Defs.' Mem. at 13, because Christopher could not have "breached a duty to effectuate an agreement which the parties to the alleged agreement never agreed to make in the first place," id. at 16.  Further, the defendants assert that the plaintiff cannot "show a causal link between any alleged duty and any

alleged damages because he is collaterally estopped from asserting that . . . Corsetti had agreed to transfer the Property to him." Id.

    The Court finds these arguments unconvincing. Without question, a plaintiff suing his former attorney must show "that the attorney neglected a reasonable duty" and "that the attorney's negligence resulted in and was the proximate cause of a loss to the client" to state a claim for legal malpractice under District of Columbia law. Chase v. Gilbert, 499 A.2d 1203, 1211 (D.C. 1985). But Corsetti's failure to execute a testamentary contract or an inter vivos transfer of the Property to the plaintiff does not negate Christopher's obligations to inform the plaintiff of the benefits of such an arrangement. It is this alleged breach of duty by Christopher, not a breach of his "duty to effectuate an agreement," Defs.' Mem. at 16, that is at the root of the plaintiff's claim. See Second Am. Compl. ¶ 47(a) (alleging that Christopher "neglected to . . . advise the [p]laintiff . . . of the need for a [contract to form a will]"); see also id. ¶ 47(b) (alleging that the plaintiff "specific[ally] reli[ed]" on this "tainted advice").

    The defendants also err in suggesting that the Superior Court's probate ruling forecloses a showing that any harm sustained by the plaintiff was proximately caused by Christopher's alleged omissions. As the defendants themselves note, if an attorney's alleged error "is the failure to obtain or advise of a provision, concession[,] or benefit, the client must prove that the other party would have agreed" to that provision, concession, or benefit. 3 Ronald Mallen & Jeffrey Smith, Legal Malpractice § 24.5 (2008 ed.) (prior edition quoted in Defs.' Mem. at 17-18) (emphasis added). The fact that Corsetti did not enter into a contract to devise the Property to the plaintiff is surely probative on this question, but it does not absolutely guarantee that Corsetti would not have entered into such a contract (or, alternatively, an inter vivos trust) had the

9

plaintiff, after being properly informed of the benefits of a contract by Christopher, insisted upon one. The Superior Court did not render an opinion with respect to this question, nor could it have done so without drifting into the realm of dicta given the narrow scope of the issues before it.[4]

The Court must accept as true the plaintiff's allegations unless they are clearly foreclosed by the preclusive effects of the Superior Court's probate ruling. Trudeau, 456 F.3d at 193. Because the Superior Court's probate decision does not control the factual question of whether Corsetti would have agreed to a testamentary contract or an inter vivos trust had the plaintiff been properly advised by Christopher, the Court must take the plaintiff at his word when he alleges that Christopher's "incomplete and therefore negligent and tainted advice," Second Am. Compl. ¶ 47(b), caused the plaintiff to lose "the valuable and unique opportunity to obtain the Property" presented by an inter vivos transfer, id. ¶ 22. These allegations suffice to state the breach of a duty resulting in harm to the plaintiff. Accordingly, the defendants' motion to dismiss is without merit and must be denied.

### IV. Conclusion

Given the Superior Court's factual finding that Corsetti did not in fact contract to devise the Property to the defendant, it will obviously be difficult for the plaintiff to prove that she would have agreed to a contract of that nature (or an inter vivos instrument to the same effect) had the plaintiff prevailed upon her to do so based on his attorney's advice. Although difficult,

---

[4] The plaintiff is entitled to at least the opportunity to prove that Corsetti would have entered into such an arrangement had the plaintiff been properly advised by Christopher. Of course, the defendants are always free to seek summary judgment on this factual question if they believe that there is no evidence in the record that would permit a jury to reach this factual conclusion. See Fed. R. Civ. P. 56(b) (providing that a defending party may move for summary judgment "at any time").

the Court cannot definitively say the task is impossible, and that possibility is enough to forestall dismissal of the plaintiff's claims under the doctrine of collateral estoppel.  And because the defendants (with one exception addressed above) base their motion to dismiss solely on the purportedly preclusive effects of the Superior Court decision, the groundless basis for that argument leaves the Court with no choice but to deny the defendants' motion.  The Court will therefore deny that motion and direct the defendants to file their answers within ten days of the entry of the order accompanying this memorandum opinion in accordance with Federal Rule of Civil Procedure 12(a)(4)(A).

      **SO ORDERED** this 29th day of February, 2008.[5]

      REGGIE B. WALTON
      United States District Judge

---

[5] An order denying the defendants' motion and directing the defendants to file their answers to the plaintiff's second amended complaint within ten days of the entry of the order follows.